IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND NETSTAR TECHNOLOGIES LLC, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 2:13-cv-00893-JRG-RSP |
| GOOGLE INC. | § § | JURY TRIAL DEMANDED |
| *Defendant.* | § § | |

## GOOGLE INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

BACKGROUND ..................................................................................................2

I.   THE MAJORITY OF KEY WITNESSES AND EVIDENCE ARE LOCATED IN
     OR NEAR THE NORTHERN DISTRICT OF CALIFORNIA, NOT TEXAS .................2

     A.   Google ................................................................................................2

     B.   Prior Art Witnesses and Evidence in the Northern District ....................................3

II.  PLAINTIFFS ARE LICENSING COMPANIES THAT MAINTAIN AN OFFICE
     IN THE EASTERN DISTRICT FOR LITIGATION PURPOSES ....................................6

     A.   Rockstar ................................................................................................6

     B.   Plaintiffs' Other Potential Witnesses ....................................................7

LEGAL STANDARD ................................................................................................7

ARGUMENT ................................................................................................8

I.   THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT .........8

II.  THE PRIVATE INTEREST FACTORS HEAVILY FAVOR TRANSFER ....................9

     A.   The Northern District Is More Convenient for Most of the Potential
          Witnesses ................................................................................................9

          1.   The Northern District is more convenient for non-party witnesses............9

          2.   The Northern District is more convenient for party witnesses .................10

     B.   The Northern District Possesses More Usable Subpoena Power.........................12

     C.   The Majority of the Documentary Evidence Is Maintained or Accessible in
          or Near the Northern District ................................................................13

     D.   There Are No Practical Problems With Transferring This Case ...........................13

III. THE PUBLIC INTEREST FACTORS FAVOR TRANSFER.........................................14

     A.   The Northern District Has a Greater Interest in this Case .....................................14

     B.   The Remaining Public Interest Factors Are Neutral.............................................15

CONCLUSION ................................................................................................15

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
  No. 10-CV-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012).................................................11

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)...........................................................7, 8, 9, 12, 13

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009)..............................................................8, 12, 14

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011)..............................................................................11

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) ..............................................................9, 13

*Network-1 Security Solutions, Inc. v. D-Link Corp.*,
  433 F. Supp. 2d 795 (E.D. Tex. 2006) ...................................................................10

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)................................................................................8

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
  No. 6:09-CV-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010)........................10

*Ormco Corp. v. Align Tech., Inc.*,
  463  F.3d 1299 (Fed. Cir. 2006)..............................................................................4

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*,
  No. 6:11-CV-53 (E.D. Tex. Feb. 10, 2012) ............................................................9

*Promote Innovation LLC v. Bristol-Myers Squibb Co.*,
  No. 2:10-CV-120, 2011 WL 1399393 (E.D. Tex. Apr. 13, 2011)..........................12

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)..............................................................7, 8, 9, 15

*TransUnion Intelligence LLC v. Search Am., Inc.*,
  No. 2:10-130-TJW, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) .........................13

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011)..................................................................................9

*Vigilos, LLC v. Sling Media, Inc.*,
  No. 2:11-CV-112-DF (E.D. Tex. July 25, 2011) ...................................................15

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ...................................................................9, 11, 14

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...............................................................................7, 8, 12, 14

*Wireless Recognition Techs. LLC v. A9.com Inc.*,
    No. 2:10-CV-364-JRG (E.D. Tex. Feb. 14, 2012)..................................................................14

### Statutes

28 U.S.C. § 1404...........................................................................................................................15

Fed. R. Civ. P. 45.........................................................................................................................12

Defendant Google Inc. respectfully moves to transfer this action to the Northern District of California (the "Northern District") pursuant to 28 U.S.C. § 1404(a).  This action should be transferred to the Northern District because it is clearly more convenient for the parties, witnesses, and evidence in this case than the Eastern District of Texas (the "Eastern District").

Plaintiffs Rockstar Consortium US LP and NetStar Technologies LLC's Complaint alleges that Google infringes seven patents relating to Internet search and advertising on Internet search engines, each titled "Associative Search Engine."  The '065 patent relates to providing search engine results influenced by user profile data.  ('065 Pat., Dkt. 1-3, 1:50-57.)  The '969, '245, '970, '178, '183, and '883 patents are directed generally to providing advertisements to a search engine based on a user's search request.  (*See, e.g.*, '969 Pat., Dkt. 1-4, 1:46-57.)  All patents claim priority to an application dated February 13, 1997.

Plaintiffs' Complaint establishes that the Northern District is more convenient than the Eastern District.  The Complaint identifies Google's Internet search engine and Google AdWords, which generates advertising displayed along with search results, as the accused products.  Google's relevant development efforts, operations, and records regarding Google search and AdWords are predominantly based in the Northern District, and most Google employees and former employees with relevant knowledge of these products are also in the Northern District.

Moreover, many non-party and party witnesses knowledgeable about the development of early search engines and search engine advertising are in Silicon Valley, in the Northern District.  These witnesses include current and former employees of early Internet search and search advertising companies, Excite, Yahoo!, InfoSeek, AltaVista, WebCrawler, and Google.  These individuals will likely possess knowledge of relevant prior art.

On the other hand, there are no meaningful connections between this action and the Eastern District.  The accused services were not engineered and are not maintained in the Eastern District.  Most relevant witnesses are outside the subpoena power of this Court.  In fact, Rockstar's primary place of business is 1,400 miles away from the Eastern District at the former Nortel Networks headquarters in Ottawa, Canada.  Both named inventors also worked for Nortel Networks in Canada during their alleged development of the patented technologies, and currently reside there.  Rockstar does maintain an office in Plano, Texas, but that is at most a satellite location with no relevant Rockstar employee, but rather only lawyers and support staff.  NetStar appears to have no employees or operations at all.

Further, one of Rockstar's largest shareholders, Apple, Inc. is based in the Northern District.  Rockstar's only other large U.S.-based shareholder, Microsoft Corporation, is based far closer to the Northern District than to the Eastern District, in Redmond, Washington.  Employees of Apple and Microsoft participated in the purchase of the patents-in-suit at auction, and may be witnesses in this litigation.  Indeed, Plaintiff Rockstar refers in its Complaint to the bidding process for the Nortel portfolio.  The Northern District is without question a more convenient forum for this action than the Eastern District, and this action should be transferred.

**BACKGROUND**

**I.      THE MAJORITY OF KEY WITNESSES AND EVIDENCE ARE LOCATED IN OR NEAR THE NORTHERN DISTRICT OF CALIFORNIA, NOT TEXAS**

**A.      Google**

Google is a Delaware corporation with its headquarters in Mountain View, in the Northern District of California.  (Declaration of Abeer Dubey ("Dubey Decl."), ¶ 4.)  Google's operations for its search engine and AdWords are predominantly based at its headquarters in Mountain View.  (*Id.* ¶¶ 5, 7.)  Key engineers who work on Google's search engine also work at

these headquarters, as do key engineers involved in developing AdWords.  (*Id.*)  Further, most

employees familiar with the business and financial aspects of Google's search engine and

AdWords also work at Google's headquarters in the Northern District.  (*Id.*)  In contrast, Google

is not aware of any employees with relevant knowledge working at its offices in Texas or in the

Eastern District.  (*Id.* ¶¶ 6, 9.)

Similarly, all or nearly all of Google's documents and records related to its search engine

and AdWords are in, or accessible from, its Mountain View offices.  (*Id.* ¶ 10.)  For example,

any design or development documents regarding these products are maintained on secure servers

located in or accessible from Mountain View.  (*Id.*)

### B.      Prior Art Witnesses and Evidence in the Northern District

Several early Internet search and search engine advertising companies were founded in

the Northern District.  Key witnesses with knowledge of highly relevant prior art systems and

publications concerning Internet search and search advertising, along with crucial documentary

evidence, are thus likely located in the Northern District:

**Excite.**  In 1993, six Stanford University students founded Excite in Palo Alto, in the

Northern District.  (Ex. 1, 2-3.)  Excite was an early pioneer in both Internet search and search

engine advertising, and developed key prior art related to the patents-in-suit.  For example, by

August 1996, six months before the patents' priority date, Excite had already developed software

that delivered targeted advertising to users based on keywords in search requests.  (Ex. 2, 3.)

Key witnesses with knowledge of Excite prior art are in the Northern District.  These witnesses

include three of Excite's six founders:  Martin Reinfried is a software engineer at Incredible Labs

in San Francisco, and Graham Spencer and Ben Lutch are Google employees in Mountain View,

California.  (Ex. 3; Dubey Decl. ¶ 8.)  Crucial documentary evidence about Excite prior art is

also likely in the Northern District.  In the mid-1990s, Excite established headquarters in Palo

Alto, Mountain View, and Redwood City, all in the Northern District.  (Ex. 1, 4-7, 9.)  After the

acquisition by @Home Network, the combined company continued to maintain its headquarters

in the Northern District.  (Ex. 1, 10-11.)  Ultimately, after @Home Network declared bankruptcy

in 2001, Ask Jeeves acquired Excite.  (Ex. 1, 12.)  Ask Jeeves, now named Ask.com, is based in

Oakland, also in the Northern District.  (Ex. 4.)

**Yahoo!**  In January 1994, two graduate students at Stanford University in Palo Alto

founded Yahoo!  (Ex. 5.)  Yahoo! offered an Internet search engine that within four years

became the world's most popular Internet portal.  (Ex. 6, 2-3.)  By August 1996, Yahoo! had

developed advertising technology using keyword targeting.  (Ex. 2, 3; Ex. 7.)  Key Yahoo!

witnesses with knowledge of this prior art, as well as documentary evidence, are likely in the

Northern District.  In particular, Yahoo!'s international headquarters and principle place of

business is in Sunnyvale, in the Northern District.  (Ex. 8, 3.)  Further, both founders of Yahoo!

still appear to live and work in the Northern District.  (Exs. 9-10.)

**WebCrawler.**  In 1994, Brian Pinkerton launched the WebCrawler search engine.  (Ex.

11.)  In 1995, America Online began using WebCrawler as the web search engine on its popular

Internet service.  (*Id.*)  WebCrawler used a search advertising system that displayed banner ads

based on keywords in search requests.  During prosecution of the patents-in-suit, the Patent

Office rejected pending claims over a publicly available article describing this advertising

system.  (Exs. 12-13.)  The applicants ultimately overcame these rejections, in part, because the

Patent Office could not rely on prior "use" of patented technology, including user manuals,

source code, and witness testimony, during prosecution.  (*See, e.g.*, Ex. 14, 2-3.)  In contrast, in

this litigation, Google will be permitted to rely on evidence of WebCrawler prior "use" to

demonstrate the invalidity of the patents-in-suit.  *See, e.g., Ormco Corp. v. Align Tech., Inc.*, 463

F.3d 1299, 1305 (Fed. Cir. 2006).  This crucial documentary evidence, as well as witnesses with knowledge of the WebCrawler advertising system, are likely in or near the Northern District.  For example, Mr. Pinkerton, who launched WebCrawler, currently works for an Internet search company in Palo Alto, in the Northern District.  (Exs. 15-16.)

**Infoseek.**  Steve Kirsch founded Infoseek Corporation ("Infoseek") in 1993.  (Ex. 17, 4.)  Infoseek offered a popular search engine that, like WebCrawler, incorporated keyword-based banner advertising software.  (Exs. 12-13.)  During prosecution, the Patent Office rejected pending claims over a publicly available article describing Infoseek's advertising system.  (*Id*.)  Key documentary evidence and witnesses with knowledge of this advertising system are likely in the Northern District.  Mr. Kirsch appears to reside in the San Francisco Bay Area.  (Ex. 17, 1.)  Further, in the 1990s, Infoseek maintained its headquarters in Sunnyvale, California, in the Northern District.  (Ex. 18.)

**AltaVista.**  In 1995, three researchers with Digital Equipment Corporation in Palo Alto, California, developed the AltaVista search engine.  (Ex. 19.)  AltaVista used search engine technology that, according to Digital, was an order of magnitude faster and more precise than other search methods.   (Ex. 20.)  The AltaVista search engine also incorporated keyword-based banner advertising software.  (Ex. 13.)  By 1997, AltaVista reported annual revenue gains from search advertising of 267 percent.  (Ex. 21.)  Key witnesses with knowledge of AltaVista prior art, as well as key documentary evidence, are likely in the Northern District.  For example, not only was AltaVista developed at Digital's Palo Alto facilities, but also two of the three principal developers of AltaVista currently reside and work in the Northern District:  Louis Monier is founder and CEO of Kyron in San Francisco and Michael Burrows is a Google employee in Mountain View.  (Ex. 22; Dubey Decl. ¶ 8.)

**Danny Sullivan.**  Danny Sullivan is the current editor-in-chief of Search Engine Land, a news website that covers industry developments in Internet search and search engine advertising. (Ex. 23.)  In July 1996, roughly six months before the patents' priority date, Mr. Sullivan began publishing "The Search Engine Report," in which Mr. Sullivan offered commentary on search engine research.  (Ex. 24, 2-3.)  During prosecution, the Patent Office quoted the first issue of the Search Engine Report to conclude that keyword-targeted advertising was "already well known before the filing of the parent application of this application."  (*Id.*)  Mr. Sullivan currently appears to live and work in Orange County, in the Central District of California.  (Ex. 25.)

## II.  PLAINTIFFS ARE LICENSING COMPANIES THAT MAINTAIN AN OFFICE IN THE EASTERN DISTRICT FOR LITIGATION PURPOSES

### A.  Rockstar

In June 2011, Apple, Microsoft, and three other technology companies founded Rockstar's predecessor, Rockstar Bidco, LP.  (Exs. 26-27.)  In July 2011, Rockstar Bidco participated in an auction conducted by Nortel Networks for a patent portfolio that included over 6000 patents, including the patents-in-suit.  (Ex. 28, 2.)  Rockstar Bidco won the auction for $4.5 billion, over 50% of which Apple supplied.  (Exs. 28-29.)  Rockstar Bidco subsequently assigned over 1000 of the acquired patents to Apple.  (Ex. 26.)  Today, Apple and Microsoft are two of Rockstar's largest shareholders.  (Dkt. 6.)  Apple's international headquarters is in Cupertino, California, in the Northern District of California.  (Ex. 29.)  Microsoft's international headquarters is in Redmond, Washington, in the Western District of Washington.  (Ex. 30.)

Rockstar is a Delaware limited partnership founded in July 2011 that describes itself as a "patent licensing business."  (Dkt. 1, ¶ 2; Exs. 31-32.)  Rockstar's international headquarters is in Ottawa, Canada, where Rockstar's executives and at least ten "reverse-engineering experts" appear to work.  (Exs. 28, 33-34 .)  Rockstar does apparently maintain an office address in Plano,

Texas, but Rockstar appears to have only five Texas-based employees, all of whom are attorneys or legal support staff.  (Exs. 32, 35.)  On information and belief, Rockstar began renting its Plano office in mid-2012.  On October 31, 2013, Rockstar filed an additional seven lawsuits in this District against Google's business partners on the Android mobile platform.  (Ex. 36.)  On December 11, 2013, Rockstar subsidiaries filed lawsuits in this District against Time Warner Cable and in the District of Delaware against Cisco Systems.  (Ex. 37.)

Plaintiff NetStar is a Delaware corporation that purports to be the "exclusive licensee" of the patents-in-suit.  (Dkt. 1, ¶ 3.)  NetStar appears to have no employees or operations.

### B.    Plaintiffs' Other Potential Witnesses

The patents-in-suit name two inventors:  Richard Prescott Skillen and Frederick Caldwell Livermore.  Both individuals worked for Nortel Networks in Montreal, Canada.  (Dkt. 1-3, 1.)  Mr. Skillen currently lives and works in the Toronto area, while Mr. Livermore's current residence has not been confirmed.  (Ex. 38.)  The patents-in-suit identify two attorneys that were involved in the prosecution of the patents-in-suit:  Vernon E. Williams and Bruce E. Garlick.  (Dkt. 1-3, 1, 1-4, 1.)  Mr. Williams appears to work in Coral Gables, Florida, and Mr. Garlick works in Austin, in the Western District of Texas.  (Exs. 39-40.)

### LEGAL STANDARD

A case should be transferred to another district if it could have been brought in that district and would be "clearly more convenient" to resolve in that district.  *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*In re Volkswagen II*")).   Whether another district is sufficiently more convenient is determined by analyzing "private" and "public" interest factors.  *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).  The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure

the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other

practical problems that make a trial easy, expeditious, and inexpensive.  *Id.*  The public interest

factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest

in having localized interests decided at home; (3) the familiarity of the forum with the law that

will govern the case; and (4) the avoidance of unnecessary problems of conflicts of law or in the

application of foreign law.  *Id.*

　　　　The proposed transferee forum is "clearly more convenient" where, as here, most

potential witnesses and relevant evidence are concentrated in and around the transferee district.

*In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (noting that in cases "featuring most

witnesses and evidence closer to the transferee venue with few or no convenience factors

favoring the venue chosen by the plaintiff, transfer should be granted");  *In re Volkswagen II*,

545 F.3d at 307-08; *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009); *In*

*re Genentech*, 566 F.3d at 1348.  Plaintiffs' choice of venue does not receive any independent

weight in the transfer analysis, but rather primarily corresponds to the required "clearly more

convenient" showing.  *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1320.

## ARGUMENT

## I.　　THIS ACTION COULD HAVE BEEN FILED IN THE NORTHERN DISTRICT

　　　　The preliminary determination to be made is "whether a civil action 'might have been

brought' in the destination venue."  *In re Volkswagen II*, 545 F.3d at 312.  As required by

§ 1404(a), this action could have been brought in the Northern District.  Google conducts

business, maintains facilities, and employs personnel in the Northern District.  (*Supra*, § I.A.)

Thus, the transfer analysis turns on weighing the private and public interest factors.

## II.     **THE PRIVATE INTEREST FACTORS HEAVILY FAVOR TRANSFER**

### A.     **The Northern District Is More Convenient for Most of the Potential Witnesses**

"The convenience of the witnesses is probably the single most important factor in transfer analysis." *In re Genentech*, 566 F.3d at 1343 (citing *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).  Because the Northern District is more convenient for most of the potential party and non-party witnesses, this important factor weighs heavily in favor of transfer.  *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 561 (Fed. Cir. 2011) (granting mandamus and ordering transfer where there was a "stark contrast in convenience and fairness with regard to the identified witnesses").

Moreover, under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen AG*, 371 F.3d 201, 204-05 (5th Cir. 2004) ("*In re Volkswagen I*").  Because more than 100 miles separate the Eastern District from the Northern District, and most witnesses reside within or closer to the Northern District, application of the 100-mile rule weighs heavily in favor of transfer.  *In re TS Tech*, 551 F.3d at 1320 (district court's disregard of 100-mile rule constituted clear error); *Phil-Insul Corp. v. Reward Wall Sys., Inc.*, No. 6:11-CV-53, *5 (E.D. Tex. Feb. 10, 2012) (100-mile rule "heavily favors transfer when a substantial number of witnesses reside in transferee venue and no witnesses reside in transferor venue" (citing *In re Genentech*, 566 F.3d at 1344-45)).

#### 1.     The Northern District is more convenient for non-party witnesses

There will likely be several non-party witnesses called to testify in this case, and many of these witnesses reside in or near the Northern District.  As detailed above, this group includes

current and former employees of early search engine companies, including Excite, Yahoo!, AltaVista, Infoseek, and WebCrawler.  (*Supra*, § I.B.)  Indeed, it appears that at least one non-party founder of each company resides in the Northern District today.  This group of prior art witnesses also includes Danny Sullivan, whose commentary on search engine advertising the Patent Office quoted during prosecution of the patents in suit, and who currently resides in Orange County, California.  Non-party witnesses also include Apple and Microsoft employees that reside in California and Washington, respectively, who participated in the purchase of the patents-in-suit.

In contrast, Google is not aware of any non-party witnesses in the Eastern District. Rockstar may point to one prosecuting attorney's residence in Austin, in the Western District of Texas, but this isolated fact does not outweigh the inconvenience that numerous California-based witnesses would suffer if transfer were denied.  *Network-1 Security Solutions, Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 802 (E.D. Tex. 2006) ("The extension of the argument that venue should be based on the location of the inventors or prosecuting attorney would require that any suit involving the '930 patent be filed in New York.")  Likewise, Rockstar also may point to the named inventors' residence in Ontario, Canada, but Marshall and San Francisco are comparably accessible from Toronto.  (Exs. 41-42.)

The Northern District is thus clearly more convenient for non-party witnesses, a fact that is typically "given greater weight than the convenience of party witnesses."  *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-CV-390, 2010 WL 3855520 at *6 (E.D. Tex. Sept. 30, 2010).  Convenience to non-party witnesses thus weighs heavily in favor of transfer.

2.      The Northern District is more convenient for party witnesses

The Northern District is also more convenient for party witnesses.  Plaintiffs' complaint accuses Google's AdWords product and Google's search engine of infringing the patents-in-suit.

Both AdWords and the search engine are developed and maintained by Google in large part in the Northern District, and Google witnesses with technical knowledge of these products predominantly work and reside in the Northern District.  (*Supra*, § I.A.)  Google witnesses with knowledge of sales, marketing, and finances concerning these products are also primarily based in the Northern District.  Further, Google witnesses with knowledge of pertinent prior art, including founders of Excite and AltaVista discussed above, also work and reside in the Northern District.

No relevant party witnesses work at Google's offices in Texas or in the Eastern District. Rockstar may claim that its executives in Ottawa would be inconvenienced by trial in the Northern District, but again, total travel times from Ottawa to San Francisco and Marshall are in fact comparable.  (Exs. 42-43.)  Rockstar may also point to its office in Plano, but Rockstar only established that office in mid-2012 and it at most employs only litigation and licensing attorneys and support staff.  *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 10-CV-448, 2012 WL 122562 at *5 (E.D. Tex. Jan. 9, 2012) (finding that defendants' presence in the Northern District of California, "where the decisions and events giving rise to this case likely were made or occurred," outweighed plaintiff's establishment of a "litigation and licensing" office in the Eastern District over two years before filing suit); *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011) (noting that plaintiff's opposition to the petition for transfer rests on the "fallacious assumption . . . that this court must honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient").

As the Northern District is clearly more convenient for party witnesses, this factor weighs heavily in favor of transfer.  *In re Volkswagen I*, 371 F.3d at 204-205.

**B.      The Northern District Possesses More Usable Subpoena Power**

"The fact that [a] transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly." *In re Genentech*, 566 F.3d at 1345.  The presence of absolute subpoena power over more non-party witnesses in the transferee district will "weigh the heaviest in favor of transfer." *Promote Innovation LLC v. Bristol-Myers Squibb Co.*, No. 2:10-CV-120, 2011 WL 1399393 at *2 (E.D. Tex. Apr. 13, 2011).  A court has "absolute subpoena power" over a witness when that court can compel that witness to attend both depositions and trial. *In re Hoffman La-Roche*, 587 F.3d at 1337-38.  A court may compel a non-party witness to attend depositions or trial within 100 miles from his or her residence. *Id.*, Fed. R. Civ. P. 45(c), (d).  If trial is more than 100 miles from a non-party witness's residence, but within the state, the court may compel attendance so long as the witness would not incur "substantial expense." Fed. R. Civ. P. 45(c), (d).

Here, as discussed above, there are several potential non-party witnesses within the absolute subpoena power of the Northern District, such as non-party witnesses with knowledge of the prior art.  (*Supra*, § I.B.)  If this case remains in Texas, Google will be unable to compel any of these potentially critical witnesses to appear at trial.

For example, non-party founders of Yahoo!, Infoseek, WebCrawler, AltaVista, and Excite reside within the absolute subpoena power of the Northern District.  Further, Danny Sullivan works in Orange County, California, within the Northern District's trial subpoena power.  Google is aware of only one non-party witness, a prosecuting attorney, as within the trial subpoena power of the Eastern District of Texas.  Accordingly, the parties will be better equipped to present relevant evidence at trial if this case proceeds in the Northern District, and this factor weighs heavily in favor of transfer. *In re Volkswagen II*, 545 F.3d at 316-17; *In re Genentech*, 566 F.3d at 1345.

**C.**     **The Majority of the Documentary Evidence Is Maintained or Accessible in or Near the Northern District**

As is true in most patent infringement cases, the majority of the relevant evidence in this case will come from Google.  *In re Genentech*, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.  Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." (citing *Neil Bros.*, 425 F. Supp. 2d at 329)).  As detailed above, much of the evidence relating to the accused Google search engine and AdWords products are stored or accessible in the Northern District.  (*Supra*, § I.A.)  Further, key documentary evidence regarding prior art developed by early search engines companies, including Excite, Yahoo!, WebCrawler, Infoseek, and AltaVista, is also likely located in the Northern District given the connection of these entities to the Northern District discussed above.  (*Supra*, § I.B.)

Because the majority of the evidence is located in or near the Northern District, or accessible from there, this factor also weighs in favor of transfer.  *In re Genentech*, 566 F.3d at 1345–6 ("Keeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on [defendants] to transport documents that would not be incurred if the case were to proceed in the Northern District of California.").

**D.**     **There Are No Practical Problems With Transferring This Case**

There are no practical problems with transferring this case because this case is in its infancy:  discovery has not begun, the parties have not exchanged initial disclosures or contentions, and any such disclosures or contentions exchanged in the future can be used in the Northern District as well.  This factor is thus neutral.  *TransUnion Intelligence LLC v. Search Am., Inc.*, No. 2:10-130-TJW, 2011 WL 1327038 at *5 (E.D. Tex. Apr. 5, 2011) (finding factor neutral in light of limited discovery that had taken place).

III.     **THE PUBLIC INTEREST FACTORS FAVOR TRANSFER**

    A.     **The Northern District Has a Greater Interest in this Case**

      This case has a strong connection to the Northern District.  Plaintiffs accuse Google of

infringement based on its search engine and AdWords products.  (Dkt. 1, ¶¶ 12–13.)  Google's

activities related to these products are in large part in the Northern District.  (*Supra*, § I.A.)  The

Northern District's interest in this case is thus significant because the allegations call into

question the work and reputation of engineers responsible for that work, as well as Google's

reputation.  *In re Hoffman La-Roche*, 587 F.3d at 1336 (finding that the proposed transferee

district's "local interest in this case remains strong because the cause of action calls into question

the work and reputation of several individuals residing in or near that district and who

presumably conduct business in that community"); *Volkswagen I*, 371 F.3d at 206 ("[J]ury duty

is a burden that ought not to be imposed upon the people of a community which has no relation

to the litigation"); *Wireless Recognition Techs. LLC v. A9.com Inc.*, No. 2:10-CV-364-JRG at

*11(E.D. Tex. Feb. 14, 2012) (granting transfer where, among other factors, "the residents of the

Northern District of California have a particularized interest in the subject matter of this lawsuit

because the majority of the Defendants [including Google] are headquartered there.  These

Defendants developed the allegedly infringing products in the Northern District of California and

collectively employ thousands of people residing there.").  Apple, one of Rockstar's largest

shareholders, is also based in the Northern District.  (*Supra*, § II.A.)

      Further, Plaintiffs have not drawn a single connection tying this case to the Eastern

District that could not be drawn to any other district, calling into question any potential claim by

Plaintiffs regarding this district's local interest in this action.  *In re Volkswagen II*, 545 F.3d at

318 (noting that a rationale based on such connections "could apply virtually to any judicial

district or division in the United States; it leaves no room for consideration of those actually

affected—directly and indirectly—by the controversies and events giving rise to a case.").  The

fact that Google makes their products available nationally, including within the Eastern District,

does not establish an interest in having the case tried locally.  *In re TS Tech*, 551 F.3d at 1321;

*Vigilos, LLC v. Sling Media, Inc.*, No. 2:11-CV-112-DF at *11 (E.D. Tex. July 25, 2011)

("[T]his case is not tied to the Eastern District in any manner that would not apply to most other

districts, including the Northern District.").  On balance, this factor thus weighs in favor of

transfer.

> ## B.     The Remaining Public Interest Factors Are Neutral

The remaining public interest factors are neutral.  The Eastern District and the Northern

District resolve patent cases in comparable amounts of time.  From 1995-2012, the Eastern

District's median time interval from filing to trial was 2.19 years, and the Northern District's was

2.72 years.  (Ex. 44, 22.)  Both districts are familiar with and can apply the federal patent laws to

this patent infringement case, and no conflict of laws problems are expected to arise in either

district.  *In re TS Tech*, 551 F.3d at 1320.

> ## CONCLUSION

For the foregoing reasons, Google respectfully requests that this Court transfer this case

to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

Dated:  January 10, 2014

Respectfully submitted,

**MANN | TINDEL | THOMPSON**
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

By: _____*/s/ J. Mark Mann*_____
   **J. Mark Mann**
   State Bar No. 12926150
   **G. Blake Thompson**
   State Bar No. 24042033

**ATTORNEYS FOR GOOGLE INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 10, 2014.

_____*/s/ J. Mark Mann*_____
**J. Mark Mann**