**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **ROCKSTAR CONSORTIUM US LP AND NETSTAR TECHNOLOGIES LLC**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**GOOGLE INC.**<br><br>    **Defendant.** | Case No. 2:13-cv-00893-JRG-RSP<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFFS' RESPONSE TO GOOGLE'S MOTION TO TRANSFER**

# TABLE OF CONTENTS

I. Introduction ........................................................................................................................1

II. Facts ...................................................................................................................................2

    A. Nortel and the Patents-in-Suit ................................................................................2

    B. The Auction for Nortel's Patents ............................................................................3

    C. Rockstar Consortium and NetStar ..........................................................................4

    D. Google's Factual Assertions Regarding the Accused Products and List of Prior Art Witnesses Do Not Tell The Whole Story .................................................5

        1. Google's Products ........................................................................................5

        2. Prior Art Witnesses ......................................................................................8

III. Argument ...........................................................................................................................9

    A. Private Interest Factors ...........................................................................................9

        1. Google Cannot Show That the Relative Ease of Access to Sources of Proof Favors Transfer ..........................................................................9

            a. Google Cannot Meet Its Threshold Burden to Describe Its Sources of Proof With Specificity ......................................................9

            b. Even if All of Google's Sources of Proof Are in California, This Factor Still Does Not Favor Transfer ...................................11

        2. The Availability of Compulsory Process Favors Plaintiffs .......................12

        3. The Cost of Attendance for Willing Witnesses Favors Plaintiffs .............13

        4. The Judicial Economy Factor Favors Plaintiffs and At a Minimum is Neutral ...................................................................................................14

    B. Public Interest Factors ..........................................................................................15

        1. Court Congestion and Time to Trial Favors Transfer ...............................15

        2. The Local Interests Are At a Minimum Neutral, as are the Final Two Factors ..............................................................................................15

IV. Conclusion .......................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Invensense, Inc. v. STMicroelectronics, Inc.*,
   2014 WL 105627 (E.D. Tex. Jan. 10, 2014) .............................................................. 11, 12, 15

*N5 Techs., LLC v. Bank of America, N.A.*,
   2014 WL 558762 (E.D. Tex. Feb. 10, 2014) ......................................................................... 13

*PersonalWeb Techs. LLC v. NEC Corp. et al.*,
   Case No. 6:11-cv-655 (E.D. Tex. Mar. 21, 2013) ................................................................... 12

*Portal Techs., LLC v. IAC/Interactivecorp.*,
   2012 WL 3494826 (E.D. Tex. Aug. 15, 2012) ................................................................... 9, 12

*Portal Techs., LLC v. Yahoo! Inc.*,
   2012 WL 3242205 (E.D. Tex. Aug. 7, 2012) .......................................................................... 10

*RPost Holdings, Inc. v. StrongMail Sys., Inc.*,
   2013 WL 4495119 (E.D. Tex. Aug. 19, 2013) ................................................................. 10, 12

*Thomas Swan & Co. v. Finistar Corp.*,
   2014 WL 47343 (E.D. Tex. Jan. 6, 2014) ......................................................................... passim

*TQP Dev., LLC v. Yelp Inc.*,
   2013 WL 5450309 (E.D. Tex. Sep. 30, 2013) ......................................................................... 15

*U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*,
   2013 WL 1363613 (E.D. Tex. Apr. 2, 2013) ...................................................................... 9, 10

I. **Introduction**

Google's Motion to Transfer fundamentally ignores the deep and longstanding ties that this case has to this area—documents and witnesses from Plaintiffs who work and live in the Eastern District of Texas; third-party former employees of Nortel, the prior assignee of the patents-in-suit who once employed nearly 10,000 people at its U.S. headquarters in Richardson, Texas, and whose former employees have relevant knowledge in this case on at least willfulness and damages because they were involved in discussions with Google regarding the patents-in-suit; third-party companies that are equity owners of Plaintiffs whose headquarters are in the Dallas area; and, within trial subpoena range in Austin, Texas, the third-party prosecuting attorney of the patents-in-suit whose name appears thirty times in Google's answer.

Google's Motion relies primarily on its assertion that its documents and witnesses are in the Northern District of California. But Google is careful not to say that all its relevant documents or witnesses are there. Indeed, Google's own website shows that witnesses and document custodians with relevant information stretch from India to New York City to possibly this District. Google also does not claim that all documents are kept in California, instead contending at most that such documents are *accessible* from California (just as they likely would be from Google's offices in this District). Even assuming that all of Google's witnesses and custodians are based in California, however, that venue is still not clearly more convenient than this Distict. Recognizing this fact, Google also selectively cites cherry-picked prior art witnesses who live in the Northern District of California. Google ignores, however, that prior art witnesses live throughout the country—including in the Dallas area. In short, the facts here demonstrate that the Eastern District of Texas is the most convenient location for this suit. Google cannot meet its heavy burden to show that the Northern District of California is clearly more convenient.

1

**II.     Facts**

   **A.     Nortel and the Patents-in-Suit**

Plaintiffs Rockstar Consortium US LP and NetStar Technologies LLC are the assignee and exclusive licensee, respectively, to the patents-in-suit that previously were held by Nortel. *See* Declaration of Donald Powers ¶ 5. Although Nortel's international headquarters was in Ontario, Canada, its United States headquarters was in Richardson, Texas. *Id.* ¶ 6. Those offices were at the Lakeside campus—2221 Lakeside Boulevard. *Id.* ¶ 6. It encompassed over 800,000 square feet of office space, including two office buildings. *Id.* ¶ 7. The Lakeside campus was less than one mile from the Eastern District of Texas border. *Id.* ¶ 6. At its peak around the year 2000— the time the first of the patents-in-suit issued—nearly 10,000 employees worked for Nortel in the Dallas area, many living in the Eastern District of Texas. *Id.* ¶ 7.

For the prosecution of the patents-in-suit, Nortel's primary outside counsel was Bruce Garlick. At that time and to this day, Mr. Garlick has resided in Austin, Texas. Google itself acknowledges this fact. Motion at 7. Mr. Garlick appears on 6 of the 7 patents-in-suit. Google's answer and affirmative defenses cite his name approximately 30 times in its inequitable conduct defense. Google Answer, Dkt. 20, ¶¶ 62–230. The first issued of the patents-in-suit lists Vernon Williams as prosecution counsel. Mr. Williams resides in Florida. Motion at 7.

In January 2009, Nortel declared bankruptcy. At that time, over 2,000 employees still worked at Nortel's Richardson office, including the Nortel IP Law Group which focused on monetizing Nortel's patents. Powers Dec. ¶ 8; Declaration of Mark Hearn ¶ 4. At various times since 2000 through bankruptcy until Nortel sold its portfolio, the Nortel IP Law Group was based in Richardson. Hearn Dec. ¶ 4. After the bankruptcy, many of the employees who remained at Nortel focused on monetizing Nortel's patent assets, including the patents-in-suit. Hearn Dec.

2

¶ 5. In 2010, Nortel's intellectual property team specifically discussed the patents-in-suit with Google. *Id.* ¶ 6. Indeed, Nortel even presented to Google claim charts of the patents-in-suit during these discussions. *Id.* ¶ 7.

At least one of these former Nortel employees who discussed licensing the patents-in-suit with Google in 2010—Mark Hearn—currently works for Plaintiffs out of Plaintiffs' Plano, Texas office. Hearn Dec. ¶ 2. Other current employees with relevant knowledge currently live in this District and have lived in this District for 17 and 13 years, respectively. Powers Dec. ¶¶ 3, 23. In addition, numerous former Nortel employees in or near the Eastern District of Texas have knowledge of issues relevant to this case—particularly willfulness, Google's knowledge of the patents-in-suit, and the licensing and monetization efforts on the patents-in-suit. These individuals include Raj Krishnan, who lives and works in the Dallas area and who also met with Google in 2010; Art Fisher, who lives and works in the Dallas area; and Richard Weiss, who lives in the Eastern District of Texas. Powers Dec. ¶ 23; Hearn Dec. ¶ 3.

### B. The Auction for Nortel's Patents

In 2011, Nortel held an auction for its patents. Google made a "stalking horse" bid for the assets at $900 million. Hearn Dec. ¶ 10. The head of patents and patent strategy for Google at that time, who likely has relevant knowledge regarding Google's bidding for the patents-in-suit, no longer works for the company and now lives on the East Coast. Exh. 1; Exh. 2 (discussing that person's role at the Nortel patent auction). Google ultimately lost the auction to the Rockstar group of companies which paid $4.5 billion for the assets. Hearn Dec. ¶ 10. Rockstar Bidco US LP, a Delaware LP that was formed by the Rockstar group as the acquisition vehicle for the patents, purchased the assets from Nortel. Rockstar Bidco then transferred the patents to one of Plaintiffs here—Rockstar Consortium US LP ("Rockstar Consortium"). *Id.* ¶ 11.

The equity owners of Rockstar Consortium are Apple, BlackBerry, Ericsson, Microsoft, and Sony.  Powers Dec. ¶ 9.  Both BlackBerry and Ericsson's U.S. headquarters are in the Dallas area.  Microsoft is in Seattle; Apple is in the Northern District of California; and Sony is in New Jersey.  *Id.* ¶¶ 10–13.  The third parties who advised Nortel in the auction are Lazard, based in New York, and Global IP Law Group in Chicago.  *Id.* ¶ 14.  The U.S. Nortel entity is now in New York and the Canadian entities are in Ontario.  *Id.* ¶ 15. Rockstar Bidco, a separate entity from Rockstar Consortium with separate management, also is based in New York.  *Id.* ¶ 16.

    C.    **Rockstar Consortium and NetStar**

When the sale of the patents-in-suit closed in 2011, many of the former Nortel employees who worked in the IP group were hired by Rockstar Consortium.  *Id.* ¶ 17. To hire the former Nortel employees in Canada, a separate Canadian corporation was established, Rockstar Consortium Inc.  *Id.*  Rockstar Consortium leased the former Nortel IP Group office space and file room at the Lakeside campus and its United States-based employees continued to work out those offices.  *Id.* ¶ 18.  The Canadian company entered into a services agreement to provide various services to Rockstar Consortium in support of its intellectual property business.  *Id.* ¶ 17. In August 2012, Rockstar Consortium signed a seven-year lease for its current offices a short drive away from Richardson at Legacy Town Center in Plano, Texas, within the Eastern District of Texas.  *Id.* ¶ 18.  The move was completed in December 2012 as soon as the build-out was finished.  It occurred because the new office provided more suitable office space and was an upgrade from the previous offices.  *Id.* ¶ 19.  Thus, documents concerning licensing and monetization—including communications with Google about the patents-in-suit—have resided in or near the Eastern District of Texas since their time of creation in the Nortel era. Hearn Dec. ¶ 9.

Rockstar Consortium's Plano office is the company's only office, although some employees also work out of their homes in addition to working from the Plano office. Powers Dec. ¶ 20. The office contains 8,125 square feet, with 10 assigned offices, 2 guest offices, 4 conference rooms and 7 work areas in addition to storage space. *Id.* ¶ 19. Rockstar Consortium currently has 15 full-time employees. 5 employees work full-time out of the Plano office, while the others spend significant time there. *Id.* ¶ 21. No employee lives in California. *Id.* ¶ 22. Of the seven employees who likely have relevant information about the patents-in-suit, three work full-time out of the Plano office, two live in Pennsylvania, one lives in Colorado, and one lives in Florida. *Id.* ¶ 23. In addition, Rockstar Consortium, Inc. employs approximately 21 employees in Canada and maintains its office in Ottawa, Canada. The Canadian employees routinely travel for work to Plano. Approximately four or fewer of those employees have relevant information about the lawsuit. *Id.* ¶ 25. It is significantly easier for those Canadian employees to travel to this District than to the Northern District of California. *Id.* ¶ 25. NetStar, the exclusive licensee, is a subsidiary of Rockstar Consortium based in Plano but with no separate employees. *Id.* ¶ 26.

    **D.**    **Google's Factual Assertions Regarding the Accused Products and List of Prior Art Witnesses Do Not Tell The Whole Story**

    **1.**    **Google's Products**

Google's Motion implies that most, if not all, of its witnesses and documents related to Google Search and AdWords are at Google's headquarters in Mountain View, California within the Northern District of California. Google is careful, however, not to claim that all or nearly all of its relevant information is in the Northern District of California. Instead, without giving any details, Google uses vague phrases such as stating that operations for the products are "predominantly based" at its California headquarters, that "most employees" familiar with the business and financial aspects of the products work from headquarters, and that "key engineers"

5

on the products are based there as well. Motion at 2-3. The Declaration of Google employee Abeer Dubey on which Google bases this aspect of its Motion similarly does not provide details about where else or how much of this work Google performs outside California. The Dubey Declaration states that the "majority" of the development work for AdWords and Search historically "took place" at its California headquarters. Dubey Dec. ¶ 7. It notably does not use the word "majority" when describing Google's current and "ongoing development efforts," stating only that the work is "predominantly based" at its California headquarters. *Id.*

Similarly, Google is careful never to say that all its relevant documents reside at its Northern California headquarters. Instead, Google's Motion states that the relevant documents "are in, *or accessible from*," its headquarters. Motion at 3 (emphasis added). The Dubey Declaration is even more circumspect, stating only that the documents "are *available in* Mountain View, California, *or* are stored on Google's various secure servers, which *are accessible and ultimately managed from* Mountain View." Dubey Dec. ¶ 10 (emphasis added). Google never discusses where it actually created or stored those documents—or indeed whether other Google offices (including the ones in Texas) can "access" those same documents.

Based on Google's own information, however, it appears that Google has a significant number of relevant employees and documents in at least India and New York City. For example, Google's own website describes its Bangalore, India office as working on "Ads" and "Search" and "developing key components of next-generation search infrastructure." Exh. 3. Indeed, the Bangalore office states that they "do important back-end work for AdWords." *Id.*

Likewise, Google's New York office appears to be heavily involved in the accused products. According to publicly-available data, one of Google's last major updates to its search engine was through the Colossus project in 2010. As one article stated, "real-time search requires a

6

very specialized tool, and Google built one. Internally the successor to Google's famed Google File System, was code named Colossus." Exh. 4, "Google's Colossus Makes Search Real-Time By Dumping MapReduce," Sep. 11, 2010. According to Google's website, however, the Colossus project runs out of New York City, not California. Exh. 5 (noting that as of 2010, one employee in New York was the "Director of Display Ads and Storage" who led the team for Colossus). Google's website notes that engineers in its New York office work on "Search" and "Ads." Exh. 6. And its New York office also is "the company's North American sales headquarters." Exh. 7. Neither Google's Motion nor Declaration provides any information at all on India or New York, or other locations where relevant information exists.

Google also maintains that "[n]one of the employees" in its Eastern District of Texas office "work on any of the accused instrumentalities identified in the Complaint." Dubey Dec. ¶ 9. A search of Google's job listings for its Dallas office, however, suggests otherwise. One job opening is for an Operations Engineer who is part of a team "responsible for monitoring the state-of-the-art physical infrastructure behind Google's powerful search technology." Exh. 8.

Moreover, Google's data centers in the United States—which help match the search and the advertising and therefore are at least related to the accused products—are closer to this District than to California. Google's website lists 6 data centers in the United States. Only one is on the West Coast, while three are in the Southeast, one is in Iowa, and one is in Oklahoma. Exh. 9.

Finally, Google does not include any information about at least one of its processes for "receiving search requests from a user, using its search engine to generate search results based at least in part on the search term, selecting . . . a relevant advertisement, . . . and providing the search results together with the particular advertisement to the user." *E.g.,* Complaint ¶ 15. While Google Search plus AdWords provides that technology to Google's sites, Google also

7

provides that same service for third-party sites. Google has provided no information about its provision of search-plus-advertising to third parties. Two of its biggest customers, however, are on the East Coast—IAC Corporation, based in New York; and AOL, based in Virginia. Exhs. 10–11. Locally, the CBS affiliate in Dallas uses Google's search-plus-advertising-service. Exh. 12. Google also cannot claim surprise that the complaint covers providing search-plus-advertising to other websites since Nortel presented claim charts to Google in 2010 regarding how Google infringes through its provision of services to third parties. Hearn Dec. ¶ 7–8.

2.     **Prior Art Witnesses**

Google also heavily relies on the presence of supposed prior art witnesses—both Google employees and non-employees—it identifies in the Northern District of California. This list appears to be cherry-picked to support its motion to transfer. Google filed this motion before serving its invalidity contentions. Notably, Google makes no representation that this identified art is the only art on which it will rely. Having known about the patents-in-suit since 2010, Google presumably has a good idea of the prior art on which it intends to assert in its invalidity contentions. Yet it intentionally does not present that complete information in its Motion.

Examining the prior art patents cited in the patents-in-suit reveals a different story. For example, of the 45 named inventors on the prior art patents, 9 resided in the Northern District of California at the time. Exh. 13. The remainder are scattered throughout the U.S., including 1 in the Dallas area and 15 on the East Coast. *Id.* Of the 18 U.S. patent families cited, 5 have at least one named inventor from the Northern District of California while 5 are from the East Coast. *Id.* One patent has a sole named inventor listed as being from the Dallas area. *Id.*; *see also* Exh. 14. That inventor appears to still reside in the Dallas area. Exh. 15. And of the 16 companies among the patents listing assignment information, 4 are in the Northern District of California, 5 are on

the East Coast, 3 are in Colorado, 1 is Dallas, 1 is in Seattle, 1 is in Ohio, and 1 is overseas. Exh. 13. In short, the prior art is not somehow uniquely centered in the Northern District of California. Rather, it is distributed throughout the United States—including in the Dallas area.

Finally, the first prior art website Google lists in its motion is Excite. Motion at 3. Google states that Excite was acquired by Ask Jeeves, now Ask.com—which is based in California. *Id.* at 4. But Google omits that according to its own Exhibit, IAC acquired Ask.com in 2005. Dkt. 18-5 at 13. And IAC has recently told this Court that the employees most knowledgeable about its website are in the New York area. *Portal Techs., LLC v. IAC/Interactivecorp.*, 2012 WL 3494826 at *2 (E.D. Tex. Aug. 15, 2012) (Payne, J.) (denying motion to transfer).

**III.     Argument**

Analyzing a motion to transfer venue requires first determining whether the judicial district to which transfer is sought is a district in which the claim could have been filed. *See, e.g., Thomas Swan & Co. v. Finistar Corp.*, 2014 WL 47343 at *2 (E.D. Tex. Jan. 6, 2014) (Gilstrap, J.). Because Plaintiffs could have filed in the Northern District of California, the transfer analysis depends on four private interest factors and four public interest factors with which this Court is well familiar and Google also cites. *Id.* No single factor is dispositive, and the factors are not necessarily exhaustive or exclusive. *Id.* Google bears the burden to prove that the Northern District of California is "'clearly more convenient.'" *Id.* (quoting cases).

**B. Private Interest Factors**

**5. Google Cannot Show That the Relative Ease of Access to Sources of Proof Favors Transfer**

   **a. Google Cannot Meet Its Threshold Burden to Describe Its Sources of Proof With Specificity**

Google bears the burden to "identify its sources of proof with some specificity such that the Court may determine whether transfer will increase the convenience of the parties." *U.S.*

9

*Ethernet Innovations, LLC v. Samsung Elecs. Co.*, 2013 WL 1363613 at *2 (E.D. Tex. Apr. 2, 2013) (Love, J.) (citing cases); *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, 2013 WL 4495119 at *3 (E.D. Tex. Aug. 19, 2013) (Gilstrap, J.) (noting that movant "has failed to meet (or even address) the burden imposed upon it"). As in *Ethernet Innovations*, "[p]roblematically, the Court is asked to presume the bulk of relevant evidence would come from the accused infringer, yet it has not been given the full picture as to the location of relevant sources of proof." 2013 WL 1363613 at *3. Google fails this threshold burden for at least three independent reasons.

*First*, Google has not identified the type or quantity of documents in its offices outside the Northern District of California. Google's own Motion necessarily implies that at least some documents exist in other locations, yet it is silent about these places. Google selectively omits descriptions of the amount or quantity of documents in California, using only vague descriptors. Google's own website demonstrates that a significant amount of relevant material exists at least in India and in New York, and perhaps even in their Eastern District of Texas office. Exhs. 3, 5–9. *Cf. Portal Techs., LLC v. Yahoo! Inc.*, 2012 WL 3242205 at *2-3 (E.D. Tex. Aug. 7, 2012) (finding factor neutral because company had relevant employees in both California and India).

*Second*, Google's Motion is silent on the location of its documents. Google states that all relevant documents are either "in, or accessible from" Mountain View. Motion at 3. But they do not specify which documents are in Mountain View and which are merely accessible from there. Google again is intentionally vague on the issue and thus cannot meet its burden. To the extent "access" to documents alone matters, it cuts strongly against Google. If Google's office in California can access these documents, presumably so too can Google's office in Frisco, Texas.

*Third*, Google does not discuss sources of proof related to providing search-plus-advertising to third-party websites. Google must show where relevant information exists for all uses of the

10


accused processes, yet Google does not even attempt to make that showing. While Google may argue that the complaint does not specifically state "Google's process of providing search plus advertising to third parties," that argument is unavailing. The complaint on its face is broad enough to cover all of Google's processes and methods, including to third parties. Google also knew that Nortel previously had provided claim charts on this very type of infringement.

      **b. Even if All of Google's Sources of Proof Are in California, This Factor Still Does Not Favor Transfer**

Wrongly assuming that almost all of Google's documents are in the Northern District of California does not change the analysis. While the bulk of documents generally reside with the infringer, courts routinely look to other sources of proof such as Plaintiffs' and third parties' documents. Given the extensive third-party involvement in the auction and the prior history between Nortel and Google, sources of proof in other locations will exist. Here, as described above, other sources of proof include Rockstar's own files in Plano and Canada; BlackBerry and Ericsson's documents in the Dallas area; the prosecuting attorney's documents in Austin; and the numerous third parties located in New York or other places closer to this District.

Google also contends that this Court should discount Rockstar's presence here because it is a recent creation. But Google ignores that for over a decade before suit, Nortel, and then Rockstar Consortium, ran monetization of the patents-in-suit out of Richardson, less than a mile from the Eastern District of Texas border. In *Invensense, Inc. v. STMicroelectronics, Inc.*, Judge Gilstrap recognized that a court could consider "evidence extremely close by" the Eastern District of Texas, where a company was less than a mile from the border and was therefore "trivially near" the Eastern District of Texas. 2014 WL 105627 at *2, *7 (E.D. Tex. Jan. 10, 2014); *see also Thomas Swan*, 2014 WL 47343 at *3 (considering companies "within or immediately adjacent to EDTX"). And in *RPost*, the Court found that the Texas office of a Delaware company was not

an artifact of litigation or ephemeral where the Vice President of Marketing worked in the office, and the office had relevant documents related to marketing and sales information. *RPost*, 2013 WL 4495119 at *2. Here, Rockstar has multiple witnesses with relevant knowledge who have both lived in the Eastern District of Texas and worked in or "trivially near" the border for years.

### 6. The Availability of Compulsory Process Favors Plaintiffs

This factor examines the "availability of compulsory process to secure the attendance of non-party witnesses." *Thomas Swan*, 2014 WL 47343 at *2. Here, the analysis cuts decisively in Plaintiffs' favor. Google relies almost exclusively on its self-identified prior art witnesses. But the prior art witnesses are all over the country, with at least one prior art witness living in the Dallas area within the absolute subpoena power of this Court. Exh. 15. More fundamentally, as Judge Davis has noted, "inventors of prior art rarely, if ever, actually testify at trial," and therefore it is important to examine other categories of witnesses. *PersonalWeb Techs. LLC v. NEC Corp. et al.*, Case No. 6:11-cv-655 (E.D. Tex. Mar. 21, 2013), Dkt. 74 at 16 n.13; *see also RPost*, 2013 WL 4495119 at *3 (reviewing prior art witnesses but then noting that "most importantly," the inventors were scattered). Google has not even submitted its invalidity contentions. Unless Google can certify that the only prior art on which it will rely is the prior art in its Motion, this Court should further discount its prior art witness identification as gamesmanship designed solely to support its venue argument.

Even taking at face value all of Google's prior art witnesses, this factor favors Plaintiffs. Importantly, the new Federal Rule 45 has clarified that any witness in the Dallas area is subject to this Court's "absolute subpoena power"—for both trial and deposition—because they live or work within 100 miles of the Eastern District border. *Invensense*, 2014 WL 105627 at *6 n.1; *see also Portal v. IAC*, 2012 WL 3494826 at *2 (noting that range extends up to 150 miles).

The most important third-party witnesses will be (1) the inventors, who live in Eastern Canada; (2) the prosecuting attorneys of the patents-in-suit—the primary one of whom is subject to this Court's trial subpoena power as Google concedes (Motion at 12), while the other is in Florida; (3) the former Nortel employees who worked with the patents-in-suit, most of whom are either in the Dallas area or Eastern Canada and none of whom is in the Northern District of California; (4) Nortel and its auction advisers, who are in New York or Chicago; and (5) the equity holders of Rockstar, only one of whom is in California while two are in the Dallas area. In sum, the availability of compulsory process strongly favors keeping the action here.

**7. The Cost of Attendance for Willing Witnesses Favors Plaintiffs**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis. While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis." *N5 Techs., LLC v. Bank of America, N.A.*, 2014 WL 558762 at *3 (E.D. Tex. Feb. 10, 2014) (Payne, J.). Google does not identify any third-party witness who would be "willing" to testify at trial. Motion at 9-10. Thus, as a threshold matter, Google again fails with respect to third-party witnesses. Here, the inventors of the patents-in-suit who live in Eastern Canada should be contacted through counsel for Plaintiffs. Powers Dec. ¶ 27. In addition, Plaintiffs' willing third-party witnesses include Nortel's former Deputy IP Counsel who lives in the District and Bruce Garlick, the prosecuting attorney whom Google cites 30 times in its answer. Powers Dec. ¶ 27; Hearn Dec. ¶ 2. The Eastern District of Texas also is more convenient for the equity investors of Rockstar. Google admits that these witnesses are relevant, Motion at 10, but ignores the two companies whose U.S. headquarters are in Dallas and the one on the East Coast.

13

Looking at this factor more broadly across all third-party witnesses also cuts against transfer. The prior art witnesses in fact are distributed throughout the country. Exh. 13. Third-party witnesses with relevant knowledge about Nortel's licensing are in Texas and Eastern Canada. The third parties involved in the auction are primarily on the East Coast, including Google's former head of patents, and one is in Chicago. Applying the 100-mile rule to the third parties demonstrates that this venue is more convenient. At a minimum, this factor is neutral. *See also Thomas Swan*, 2014 WL 47343 at *4 (factor neutral since non-party witnesses "spread across the country, including some in California and Texas").

Weighing the parties' respective burdens does not help Google either. As discussed extensively above, Google has not identified where its own witnesses with relevant knowledge reside, and many appear to be in India or New York—both of which counsel against transfer. Google also has an office in the Eastern District of Texas. Plaintiffs, by contrast, have no ties to the Northern District of California. Rockstar employees with relevant knowledge live and work in this District, and it is also significantly more convenient for those employees who are home-based (primarily on the East Coast) and regularly commute to the Eastern District of Texas.

**8. The Judicial Economy Factor Favors Plaintiffs and At a Minimum is Neutral**

While Google argues that this factor is neutral, this factor favors Plaintiffs. This case is one of eight filed by Rockstar Consortium as Plaintiff on the same day and that are pending in this District. *See* Case Nos. 2:13-cv-894, 895, 896, 898, 899, 900, and 901. In addition, a wholly-owned subsidiary of Rockstar Consortium, Constellation Technologies, has filed two additional cases here. *See* Case Nos. 2:13-cv-1079, 1080. While these cases involve different patents and technologies from the instant action, they will call for common information on the circumstances of the auction as well as the corporate structure of Rockstar. Powers Dec. ¶ 28.

### C. Public Interest Factors

#### 1. Court Congestion and Time to Trial Favors Transfer

Google concedes that time to trial in the Eastern District of Texas is almost six months shorter, stating that the average time to trial in the Eastern District is 2.19 years (a little over 26 months) while in California it is 2.72 years (32.5 months). Motion at 15. This Court has found that even smaller differences counsel against transfer. *TQP Dev., LLC v. Yelp Inc.*, 2013 WL 5450309 at *6 (E.D. Tex. Sep. 30, 2013) (Payne, J.). But the actual difference here likely is closer to a year or more. The most recent docket control orders from this Court have set trials at 20 months or less from filing. *See* Case No. 2:13-cv-00378-JRG-RSP at Dkt. 1 & 30 (filed May 3, 2013; trial 18 months later); Case No. 2:13-cv-551-JRG at Dkt. 1 & 29 (filed July 19, 2013; trial 19.5 months later). Thus, this factor counsels against transfer.

#### 2. The Local Interests Are At a Minimum Neutral, as are the Final Two Factors

While Google maintains that this factor favors transfer, it overlooks the significant contacts that Rockstar and Nortel's former employees have with the Eastern District of Texas. Many of Rockstar's witnesses have lived in or near the Eastern District for years. *See also Thomas Swan*, 2014 WL 47343 at *5 (factor neutral because one party "likely has witnesses and evidence in EDTX, so citizens in EDTX likewise have an interest in adjudicating the dispute"); *Invensense*, 2014 WL 105627 at *7 (factor neutral because parties "located either in or trivially near both districts"); *TQP*, 2013 WL 5450309 at *6 (factor neutral because infringement nationwide).

Plaintiffs agree with Google that the remaining two public interest factors—familiarity of the forum with the governing law and the avoidance of conflicts of laws—are neutral.

### IV. Conclusion

For all the foregoing reasons, this Court should deny Google's Motion to Transfer.

DATED: February 20, 2014    Respectfully submitted,

By: */s/ Justin A. Nelson*
Max L. Tribble, Jr. – Lead Counsel
State Bar No. 20213950
Alexander L. Kaplan
State Bar No. 24046185
John P. Lahad
State Bar No. 24068095
Shawn Blackburn
State Bar No.
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
akaplan@susmangodfrey.com
jlahad@susmangodfrey.com
sblackburn@susmangodfrey.com

Justin A. Nelson, State Bar No. 24034766
Parker C. Folse, III, WA State Bar No. 24895
SUSMAN GODFREY L.L.P.
1201 Third Ave, Suite 3800
Seattle, Washington 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
jnelson@susmangodfrey.com
pfolse@susmangodfrey.com

T. John Ward, Jr., State Bar No. 00794818
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, TX 75606-1231
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
jw@wsfirm.com

*Attorneys for Rockstar Consortium US LP and NetStar Technologies LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served this 20 day of February, 2014 with a copy of this document via the Court's CM/ECF system per Local Rule CD-5(a)(3).

                                                                                             _/s/ Justin A. Nelson_