**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP, et al. | § § | |
| v. | § § | Case No. 2:13-CV-893-JRG-RSP |
| GOOGLE INC. | § § | |

## **MEMORANDUM ORDER**

Before the Court is Defendant Google Inc.'s Motion to Transfer Venue to the Northern District of California. (Dkt. No. 18, the "Motion to Transfer".) Also before the Court is Rockstar's Motion for Leave to File a Supplemental Brief in Light of Newly-Acquired Evidence (Dkt. No. 92, the "Motion for Leave"), Google's Motion for Leave to Expedite Briefing on Rockstar's Motion for Leave (Dkt. No. 98), and Rockstar's Motion to Strike Google's Response to the Motion for Leave (Dkt. No. 100).

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Rockstar Consortium US LP, Inc. and NetStar Technologies LLC are entities arising out of the demise of Nortel, a Canadian telecommunications company. (*See* Resp. at 2-5.) Nortel declared bankruptcy in 2009 and subsequently held an auction for its substantial patent portfolio in 2011. (*See id.* at 2-3.) Five major technology companies—Apple, Blackberry, Ericsson, Microsoft, and Sony—pooled their resources into Rockstar Bidco LP for the purpose of bidding on Nortel's patent portfolio (*Id.* at 3-4.). Rockstar Bidco LP outbid the other participants, including Defendant Google, in the auction for Nortel's patent portfolio. (*Id.*) Rockstar Bidco LP then transferred the patents in suit to the Rockstar Consortium US LP, a Delaware limited partnership with its headquarters in Plano, Texas and one of the plaintiffs in this case. (*Id.* at 3.) Rockstar Consortium US LP subsequently created a wholly-owned

subsidiary, NetStar Technologies LLC, to which it exclusively assigned the patents-in-suit (Dkt. No. 33-1 at ¶ 26). Meanwhile, Rockstar Consortium Inc. was formed as a vehicle to hire certain of Nortel's former employees. (Resp. at 4-5.) Rockstar Consortium US LP contracts with Rockstar Consortium, Inc. for various services in support of its intellectual property business. (*Id.* at 4)

Rockstar Consortium US LP, Inc. and NetStar Technologies, LLC (hereinafter, collectively, "Rockstar") filed this suit against Google on October 31, 2013, alleging that certain technologies related to Google's search and search advertising infringe seven of Rockstar's patents. (Dkt. No. 1).

## I. MOTION TO TRANSFER

**APPLICABLE LAW**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a) (2006). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case

easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198; *In re TS Tech*, 551 F.3d at 1319.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314-15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *In re Volkswagen II*, 545 F.3d at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314-15.

Timely motions to transfer venue should be "should [be given] a top priority in the handling of [a case]," and "are to be decided based on 'the situation which existed when suit was instituted.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003); *In re EMC Corp.*, Dkt. No. 2013-M142, 2013 WL 324154 (Fed. Cir. Jan. 29, 2013) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 443 (1960)).

**DISCUSSION**

  **A. Proper Venue**

The Northern District of California and the Eastern District of Texas are proper venues.

### B. Private Interest Factors

#### 1. Relative Ease of Access to Sources of Proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (citation omitted).

Google is a Delaware corporation with its principal place of business in Mountain View, California. Google has submitted a brief declaration by Abeer Dubey—the only identification provided for Mr. Dubey is that he is an employee of Google Inc.—in support of its Motion. (Dubey Decl., Dkt. No. 18-3.) According to Mr. Dubey, "Google's ongoing development efforts, operations, and records regarding Google's search engine and AdWords are also predominantly based at the Mountain View headquarters." (*Id.* at 2.) "Google engineers with relevant technical knowledge of the search engine or AdWords are also predominantly located at these headquarters, as are Google employees familiar with relevant business and financial aspects of these products." (*Id.*) "All or nearly all of the documents related to Google's search engine and Google AdWords are available in Mountain View, California, or are stored on Google's various secure servers, which are accessible and ultimately managed from Mountain View." (*Id.* at 3) "These documents include technical documents related to Google's search engine and Google AdWords, as well as documents related to Google's operations, marketing, financials, and customer-service concerning these products." (*Id.*) Mr. Dubey's declaration briefly discusses two Google offices in Frisco and Austin, Texas. For Google's Frisco, Texas location Google only provides that "[i]n April 2012, Google opened a small office to temporarily house a handful of employees in Frisco, Texas. None of the employees at this location work on any of the accused

instrumentalities identified in the Complaint."[1] (*Id.* at 2.) For Google's Austin, Texas office, Google only provides that "[t]he Google employees in the Austin office are not involved with the development or management of Google's search engine or AdWords, and are instead predominantly involved with Google's enterprise sales group." (*Id.*)

Rockstar argues that Google's Motion suggests more substance than its carefully worded statements actually contain. (Resp. at 1, 5-6.) Rockstar argues that "Google is careful, however, not to claim that all or nearly all of its relevant information is in the Northern District of California" and that instead of providing concrete detail "Google uses vague phrases." (*Id.* at 5.) Rockstar argues that "Google never discusses where it actually created or stored those documents—or indeed whether other Google offices (including the ones in Texas) can 'access' those same documents." (*Id.* at 6.) Rockstar argues that Google "does not provide details about where else or how much of this work Google performs outside California." (*Id.*) Rockstar points to evidence that Google has failed to disclose Google facilities in other states and countries where Google performs relevant work and keeps relevant infrastructure. Rockstar argues that "Google still does not address any documents related to one of the accused products—namely searchplus-advertising on third-party sites—despite evidence suggesting those documents are on the East Coast and Dallas, among other locations." (Sur-Reply at 2.)

Google's Motion does not appear to offer any evidence regarding the location of its relevant documents or infrastructure. Google's Motion only provides that Google's headquarters is located in the Northern District of California and describes that "all or nearly all" of its documents are "available in" its headquarters or "are stored on Google's various secure servers, which are accessible and ultimately managed from" its headquarters. The recitations provided by

---

[1] Two months later Mr. Dubey filed a second declaration stating that the Frisco office was closed in December 2013. (Dkt. No. 36-4, filed March 3, 2014.)

Google create a suggestion of helpful evidence, but, unpacked, Google's Motion provides neither evidence of where its documents are actually located nor evidence that these documents are more available or accessible from the Northern District of California than they would be from the Eastern District of Texas. As to its facilities and infrastructure, Google's Motion simply recites the location of its headquarters but is essentially silent as to all other Google locations (e.g. Google's briefing says nothing of its Dallas location). A careful examination of Mr. Dubey's declaration makes it unmistakably clear both that other relevant Google locations exist and that Mr. Dubey's declaration was worded to avoid statements as to locations other than Google's headquarters. This conclusion is confirmed by the Court's review of the briefing on Google's Motion. The Court is significantly concerned that Google is not being fully candid with the Court regarding the location of its relevant documents and facilities.

Google's Motion presents scant evidence as to its own technical, business, and financial witnesses. Mr. Dubey's declaration provides that "Google engineers with relevant technical knowledge of the search engine or AdWords are also predominantly located at [its] headquarters, as are Google employees familiar with relevant business and financial aspects of these products." (Dubey Decl. at 2.) Mr. Dubey's declaration provides that "[t]he Google employees in the Austin office are not involved with the development or management of Google's search engine or AdWords, and are instead predominantly involved with Google's enterprise sales group." (*Id.*)

Google's Motion provides no clear identification of where its witnesses with relevant knowledge of the business and financial aspects of the accused products are located. Google's Motion only identifies where some employees "familiar with" such aspects are located.[2]

---

[2] Mr. Dubey's declaration makes no statement as to whether the employees of Google's Austin office have any relevant knowledge or familiarity, so it is unclear whether or not they are "familiar with relevant business and financial aspects of these products."

Google's Motion does, at least, identify where its employees "with relevant technical knowledge" are "predominantly" located, but the Court observes that Google omits to mention where the remainder of such employees are located. As with Google's relevant documents, facilities, and infrastructure, the Court is concerned that it is being presented with an incomplete and misleading factual record.[3]

Google's Motion does present argument as to possible prior art witnesses in California, stating that "[s]everal early Internet search and search engine advertising companies were founded in the Northern District" and that key witnesses and publications "are thus likely located in the Northern District." (Mot. at 3.) Google identifies several third-party individuals who founded companies that produced alleged prior art systems and who allegedly still work in the Northern District of California—Martin Reinfried,[4] Graham Spencer,[5] Brian Pinkerton,[6] and Louis Monier[7]—or who "appear to reside" in the Northern District of California—Steve Kirsh.[8]

---

[3] As one example, Mr. Dubey's declaration appears to draw a distinction (known only to Google) between employees who have "work[ed] on any of the accused instrumentalities identified in the Complaint" and employees who have worked on, have relevant knowledge of, or are familiar with aspects of Google's search engine or AdWords.

[4] Google's evidence as to Mr. Reinfried is a web page printout from LinkedIn.com that is provided without explanation. As this Court has found in the past, it is not at all clear that a printout replete with evidentiary (e.g. hearsay) problems is sufficient to meet the evidentiary burden in a Motion to Transfer context, but the Court need not conclusively address this issue because this evidence is not dispositive.

[5] Mr. Dubey's Declaration states that Mr. Spencer works at Google's headquarters.

[6] Google's evidence as to Mr. Pinkerton is web page printouts from LinkedIn.com and a web page of unexplained providence (possibly a web page created by Mr. Pinkerton), containing the statement "I run A9, a search company in Palo Alto." (Dkt. No. 18-15, 16.) Both web pages are provided without explanation.

[7] Google's evidence as to Mr. Monier is a web page printout from LinkedIn.com that is provided without explanation.

Of these third-party individuals though, Google only clearly identifies Martin Reinfried as having knowledge of prior art. Google also identifies Danny Sullivan[9], though Google does not identify what Mr. Sullivan would testify to, as residing in the Central District of California. Google also generally speculates (e.g. "[c]rucial documentary evidence about Excite prior art is also likely in the Northern District") that relevant evidence exists in the Northern District of California.

Rockstar argues that Google's analysis "cherry-pick[s] prior art witnesses who live in the Northern District of California" and ignores "prior art witnesses liv[ing] throughout the country—including the Dallas area." (Resp. at 1, 8-9.) Rockstar argues that the prior art that Google will actually use in the case has not yet been decided: Google filed its Motion before it served its invalidity contentions and "Google makes no representation that this identified art is the only art on which it will rely." (*Id.* at 8.) Rockstar argues that—instead of all of the relevant art being coincidentally located in the Northern District of California—it is more likely that relevant prior art will be spread across the country. Rockstar argues that witnesses relevant to one of the prior art references that Google suggests it will rely upon (Excite) are actually located in New York and not in California. (*Id.* at 9.)

Google's Motion identifies potential non-party witnesses—all of which happen to be in California and all but one of which happens to be in the Northern District of California—but Google provides little, if any, evidence for the Court to work with as to what the witnesses would actually testify to and as to where the witnesses actually live. Google makes no statement which,

---

[8] Google's evidence as to Mr. Kirsch is a web page printout from LinkedIn.com that is provided without explanation.

[9] Google's evidence as to Mr. Sullivan is a web page printout from LinkedIn.com that is provided without explanation.

if any, of these witnesses will be called to testify and whether any of the witnesses are willing or unwilling. For Google's other possible prior art references, Google only provides speculation, arguing that witnesses and documents "are likely in the Northern District" or that witnesses "appear to reside" there. The Court weighs that Google's evidence as to residency for most witnesses is a bare printout from LinkedIn.com. The Court weighs that that Google only provides speculation regarding the existence of possible prior art sources (e.g. documents).[10]

Rockstar subsequently filed a three-page supplemental brief detailing that the prior art references asserted by Google in its P. R. 3-3 invalidity contentions are associated with locations throughout the United States—including Texas—and across the world. (Dkt. No. 92, filed June 20, 2014) Rockstar's supplemental brief also asserts that only a portion of the subpoenas relating to prior art (4 out of 14) served by Google were directed at California while the remainder were directed to New York, Georgia, Massachusetts, Oklahoma and Tennessee. (*Id.* at 2.) Rockstar's supplement supports the Court's conclusion that Google's Motion selectively identified possible prior art witnesses in the Northern District of California and omitted possible witnesses in other states, including Texas.

The Court observes that Rockstar appears to fully disclose the location of all of its relevant witnesses and documents, not just those in its chosen venue. Rockstar presents evidence that its U.S. office is located in Plano, Texas, that it leased this office for 7 years, and that it moved into this office December of 2012, following a build-out of the office.[11] Rockstar presents

---

[10] As noted elsewhere herein, many of the actual prior art sources upon which Google *actually* relies are located far outside the Northern District of California.

[11] Plano, Texas, is located in the Eastern District of Texas a few miles north of Richardson, Texas.

evidence that its U.S. office was previously located in Richardson, Texas[12] at that the U.S. headquarters of the patentee—Nortel.[13] Rockstar presents evidence that its U.S. office was established to hire (and did hire) former employees of the patentee Nortel to consult on the Nortel patents that it had purchased.[14] Rockstar also describes the location of its other U.S. employees and related employees located outside the United States. Rockstar also presents evidence of relevant third-party documents, including third-party documents related to the bidding process and Rockstar's equity owners. Rockstar's evidence clearly refutes Google's claim that Plaintiffs "maintain an office in the Eastern District for litigation purposes." (Mot. at 1.)

The evidence presented by the Parties supports the conclusion that a substantial body of relevant evidence exists in or near the Eastern District of Texas. In contrast, it is unclear whether and how much relevant evidence actually exists within the Northern District of California. The weight of the evidence presented by Google for this factor does not meet its burden. This factor weighs against transfer to the Northern District of California.

**2.    Cost of Attendance for Willing Witnesses**

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of

---

[12] Richardson, Texas, is located in part in the Northern District of Texas and in part in the Eastern District of Texas.

[13] Nortel's facility in Richardson, Texas, was located in the Northern District of Texas. (Resp. at 2.)

[14] Rockstar's Response (Dkt. No. 33, filed February 20, 2014) includes declarations by Mr. Donald Powers (Dkt. No. 33-1) and Mr. Mark Hearn (Dkt. No. 33-2) stating, among other things, that they are former Nortel employees—Senior Counsel to Nortel—employed by Rockstar in Plano, Texas.

non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

Google argues that "key non-party witnesses, including prior art witnesses and Rockstar shareholders, are concentrated in the Northern District [of California]." (Reply at 2.) Google argues that "Google employees knowledgeable about non-infringement, invalidity, and damages are also in large part in the Northern District." (*Id.*) Google argues that Rockstar "fails to show that most individuals described in its opposition . . . are indeed 'likely' witnesses" and that Rockstar "tellingly fails to name any specific, relevant witnesses that would reap significant convenience in this District." (*Id.* at 3.)

Rockstar argues that "Google does not identify any third-party witness who would be 'willing' to testify at trial." (Resp. at 13 (emphasis in original).) Rockstar provides a declaration stating that it has specific willing third-party witnesses in Texas, including one residing in this District. (*Id.*) Rockstar argues that "Texas also is more convenient for the equity investors of Rockstar." (*Id.*) Rockstar also specifically identifies several of its employees with relevant knowledge and argues that these employees would find this venue more convenient.

Rockstar's argument that Google's non-party prior art witnesses were "cherry-picked" appears to have been a valid concern. The record before the Court reflects that non-party

witnesses at issue in this case are distributed across the United States and are not solely located in or generally closer to the Northern District of California.[15]

As discussed above, Google provides very limited evidence as to its party witnesses on technical, business, and financial topics, and the Court has its concerns regarding the candor of the limited information that Google has provided. As discussed above, Google does provide evidence of possible party and non-party prior art witnesses. As discussed above, Rockstar does identify specific witnesses, including specific willing non-party witnesses.

The weight of the evidence presented by Google for this factor does not meet its burden. The weight of the evidence of before the Court as witnesses who will likely testify at trial weighs against transfer.

### 3. Availability of Compulsory Process to Secure the Attendance of Witnesses

Under Federal Rule of Civil Procedure 45 (as recently amended), this Court may enforce a subpoena issued to any nonparty witness in the State of Texas to appear at trial, provided the party does not incur substantial expense. Fed. R. Civ. P. 45(c)(1)(B). Similarly, the Court may enforce any subpoena for a deposition to be taken within its boundaries, provided that the deposition is taken no more than 100 miles from a location where the person resides, is employed, or regularly transacts business in person. *See id.* at (a)(2), (c)(1)(A), (d)(3)(a). Moreover, party witnesses do not require compulsory process for trial and are not given much weight in this factor. Rather, the focus of this factor is on witnesses for whom compulsory process to attend trial might be necessary.

Google argues that the possible prior art witnesses are within the absolute subpoena power of the Northern District and that Danny Sullivan—an alleged prior art witness residing in

---

[15] *See supra* p. 9; *infra* p. 15-16.

the Central District of California—is within the trial subpoena power of the Northern District. (Mot. at 12.) Google argues that in contrast only one non-party witness—a prosecuting attorney—is within the trial subpoena power of the Eastern District of Texas. (*Id.*)

Rockstar argues that former Nortel employees and a relevant prosecuting attorney reside in this district. Rockstar argues that Bruce Garlick a resident of Austin, Texas, is a relevant witness: Mr. Garlick was "Nortel's primary outside counsel" and his name "appears on 6 of the 7 patents-in-suit." (Resp. at 2.) Rockstar argues that there is no evidence suggesting that the prior-art witnesses Google points to are unwilling. (Sur-Reply at 3.)

The weight of the evidence presented by Google for this factor does not meet its burden. The weight of the evidence of before the Court as to compulsory process for non-party witnesses who will likely testify at trial weighs against transfer.

### 4. All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that this factor is neutral.

### C. Public Interest Factors

#### 1. Administrative Difficulties Flowing From Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffman-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). This factor is the "most speculative," and in situations where "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of those other factors." *In re Genentech*, 566 F.3d at 1347.

Google presents evidence that time to trial is a half a year faster in this District than in the Northern District of California and argues that that this factor is neutral. (Mot. at 15.) Google

argues that "[b]ecause most patent cases do not go to trial, however, total time to disposition in each venue is also important, if not more so, than time to trial." (Reply at 5.) Google points to a 2.3 month difference in the time to termination between the venues. (*Id.*) Google makes no representation that it does not intend to carry its case to trial.

The Court finds that this factor weighs against transfer.

### 2. Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of the chosen venue in having the case resolved there. *Volkswagen I*, 371 F.3d at 205-06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation."

Google argues that the Northern District of California has a greater local interest in this case since "Google's activities related to these [accused] products are in large part in the Northern District [of California]." (Mot. at 14.)

Rockstar presents evidence that the U.S. headquarters of the patentee—Nortel—was located in Richardson, Texas, and that the Plaintiff has its U.S. office located in this District. Rockstar argues that many of its witnesses "have lived in or near the Eastern District for years." (Resp. at 15.)

While it is clear that some portion of Google's activities related to the accused products occurs in the Northern District of California, it is unclear from the evidence presented by Google what relative portion of Google's relevant activities occurs in the Northern District of California and what portion occurs in other districts. In contrast, Rockstar presents straightforward evidence that its U.S. presence is in the Eastern District of Texas.

The weight of the evidence presented by Google for this factor does not meet its burden. This Court finds that this factor weighs against transfer.

### 3-4. Familiarity of the Forum With the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Parties agree these factors are neutral. The Court finds that these factors are neutral.

## II. SUBSEQUENT MOTION PRACTICE

As detailed above, Rockstar moved to supplement its response to Google's motion to transfer with three pages (excluding exhibits) detailing information related to the prior art references asserted in Google's invalidity contentions. (Dkt. No. 92.) Despite the fact that the bulk of the evidentiary argument in Google's Motion to Transfer concerned the location and importance of prior art, Google opposed Rockstar's supplement, arguing that the location of Google's prior art evidence "is not important to the Court's resolution of the Transfer Motion. Rather, it simply repeats Rockstar's prior argument that prior art witnesses and evidence are dispersed around the world [and the United States], an irrelevant fact under well-established Federal Circuit law." (Dkt. No. 97 at 1.) In view of Google's previous attestation that its entire world of prior art consisted of six references in California (five in the Northern District), the Court finds no merit to Google's contention that it is "not important" and "irrelevant" that Google has subsequently taken the position that far more prior art is relevant (30+ additional references) and that this prior art is located in other forums, such as Massachusetts (one subpoena), New York (six subpoenas), New Jersey, Virginia, Georgia (one subpoena), Tennessee (one subpoena), Texas, Oregon, and Washington.

The duty of candor imposed upon parties in this Court is especially important in the Motion to Transfer context, where one side often has exclusive access to a substantial portion of information regarding the locations of relevant evidence, facilities, witnesses, and other pertinent factors. It is troubling then, that not only did Google fail to timely come forward and disclose to the Court when the factual evidence it relied upon in the Motion to Transfer briefing was shown

- 16 -

to be incomplete and—at least in part—incorrect and misleading, but that Google also opposed Rockstar's attempts to ensure that the factual record before the Court was both accurate and sufficiently complete to allow it to perform the analysis required by Section 1404(a). Rockstar's Motion for Leave to File a Supplemental Brief in Light of Newly-Acquired Evidence (Dkt. No. 92) is **GRANTED**. Google's Motion for Leave to Expedite Briefing on Rockstar's Motion for Leave (Dkt. No. 98) is **DENIED**. Rockstar's Motion to Strike Google's Response to the Motion for Leave (Dkt. No. 100) is **DENIED**.

## CONCLUSION

A movant seeking to transfer bears the evidentiary burden of establishing that the movant's desired forum is clearly more convenient than the forum where the case was filed. The Court finds that Movant has not established that the Northern District of California is a clearly more convenient forum than the Eastern District of Texas. Accordingly, Defendant Google Inc.'s Motion to Transfer Venue to the Northern District of California (Dkt. No. 18) is **DENIED**.

**SIGNED this 23rd day of September, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE