IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ROCKSTAR CONSORTIUM US LP AND NETSTAR TECHNOLOGIES LLC, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 13-cv-00893-RG |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| GOOGLE INC. | ) ) | |
| Defendant. | ) ) ) | |

## GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS

## I.  GOOGLE HAS GOOD REASON TO AMEND BASED ON ITS DILIGENCE

Rockstar fails to cite a single case where a movant conducted an extensive prior art search prior to serving preliminary invalidity contentions, was diligent in discovering new art, and yet failed to demonstrate good cause.  Unlike the defendant in *Performance Aftermarket Parts Grp*—who discovered <u>zero</u> references prior to serving its invalidity contentions—Rockstar does not dispute that Google undertook multiple rounds of prior art searching that unearthed hundreds of prior art references prior to serving its Invalidity Contentions.  Indeed, Rockstar objected to the volume of references cited in Google's Invalidity Contentions.  (*See* Dkts. 117 and 134.)  Rockstar's request that the Court simply ignore Google's diligent efforts prior to serving its Invalidity Contentions defies logic and precedent.  *See Theranos, Inc. v. Fuisz Pharma LLC*, No. 5:11-CV-05236-PSG, 2013 WL 5487356, at *1-2 (N.D. Cal. Oct. 2, 2013) (granting motion add "publicly available prior art references" where party "spent hundreds of hours reviewing prior art and preparing its invalidity contentions"); *Streak Products, Inc. v. Antec, Inc*., No. 3:09-CV-04255-RS, 2010 WL 3515752, at *2 (N.D. Cal. Sept. 8, 2010) (granting leave to supplement in light of hundreds of hours "spent searching for and analyzing the evidence and preparing their initial invalidity contentions").[1]  Rockstar asserted over <u>140 claims</u>, which left Google with "an unreasonable burden" in developing its defenses and further supports granting this Motion.  *See Network Prot. Sciences, LLC v. Fortinet, Inc.*, No. 3:12-CV-01106-WHA, 2013 WL 1949051, at *2 (N.D. Cal. May 9, 2013) (granting motion to add publicly available references in light of the "<u>bone-crushing burden of conducting a prior art search for more than fifty patent claims</u>") (emphasis added).

Rockstar's Opposition rests on an unfounded assertion that any investigation would have uncovered the IPO Filing before the Invalidity Contention deadline.  (Dkt. 236, 2.)  However, "[u]nsuccessful prior art searches, standing alone, do not demonstrate an absence of diligence." *Network Prot.*, 2013 WL 1949051 at *2.  This is particularly true when facing the greater difficulties in identifying "internet-based" prior art as compared "with more traditional

---

[1] In its Opposition, Rockstar also cites to cases from the Northern District of California.

1

technology." *Yodlee, Inc. v. CashEdge, Inc.*, No. 3:05-CV-01550-SI, 2007 WL 1454259, at *2 (N.D. Cal. May 17, 2007) (granting leave to add publicly available websites <u>9 months after</u> the court issues its *Markman* order).  Rockstar's reasoning assumes—without any support—that any search that does not include searching archived SEC filings of the company that offered a prior art system is *per se* deficient.  (Dkt. 236, 2.)  Prior art searching typically does not include IPO filings, and instead focus on patents, published patent applications, and non-patent literature, such as journals, books, academic work, product literature, and internet searching.  (Ex. A.)[2] Rockstar fails to cite a single case where an IPO filing was asserted as a 102(b) printed publication.  Moreover, "research and analysis of prior art is an art, not a science" and should not require formulaic steps.  *Zoltar Satellite Alarm Sys., Inc. v. Motorola, Inc.*, No. 5:06-CV-00044-JW, 2008 WL 913326, at *2 (N.D. Cal. Apr. 2, 2008) (granting motion to add an "additional fifteen publicly available references").

The undisputed facts demonstrate that a professional prior art search firm, Google's expert consultants, and outside counsel were unable to come across the IPO Filings despite multiple diligent searches until late July 2014.  This should come as no surprise to Rockstar since the LexisNexis "research guide" cited in Rockstar's Opposition states that "you have to get lucky" to find these "old filings" online.  (Dkt. 263-6, 2.)  Indeed, an Internet search for "infoseek" fails to bring up any mention of its IPO filing in any of the first <u>100</u> results.  (Ex. B.)

Even Rockstar's manufactured search for "InfoSeek IPO filing"—which smacks of hindsight bias—fails to provide the actual copies of the Infoseek S-1 filing that Google now seeks to add.  Rockstar's results appear to be merely text versions of the actual filings and lack any images (e.g., screenshots of prior art search engines, advertisements, or date stamps).  Despite Rockstar's characterization that the IPO Filings were publically available, the difficulty in locating the actual, original IPO Filings through Internet searches further justifies Google's inability to discovery these documents earlier.  *Audionics Sys., Inc. v. AAMP of Florida, Inc.*, No. 2:12-CV--10763-MMM-JEM, 2014 WL 3563311, at *7-9 (C.D. Cal. Mar. 12, 2014) (granting

---

[2]    Unless otherwise noted, all exhibit citations are to the exhibits attached to the declaration of Lance Yang.

motion to add "articles [that] are out of print and would not have been revealed by an Internet search" despite the fact that the author's name was included in the provisional application of the patent-at-issue).

Despite Google's best efforts prior to serving its Invalidity Contentions, the IPO Filings were only discovered through Google's continued diligence through third-party interviews— which Google began <u>before</u> its Invalidity Contentions were due.  (Yang Decl. at 2.)  *See Alt v. Medtronic, Inc.*, No. 2:04-CV-00370-LED, 2006 WL 278868 at *4 (E.D. Tex. Feb. 1, 2006) (granting motion to add defendant's own products discovered through employee interviews <u>after the completion of *Markman* briefing</u>).  Google had less than two months after Rockstar served 1,261 pages of infringement allegations asserting 142 claims before serving its Invalidity Contentions.  Google expeditiously discovered the potential relevance of these documents two months later.  Denying the Motion under these circumstances would "conflict with the spirit, if not the letter, of the broad discovery regime under the Federal Rules of Civil Procedure, especially given the particular importance of discovery in complex patent cases."  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

Once Google discovered the possible relevance of these documents, it immediately requested these documents from the SEC.  Good cause exists for requesting the <u>authentic copies of the original IPO Filings directly from the SEC</u>—rather than through a third-party service— because Plaintiffs sometimes raise evidentiary challenges to printed publications.  Even now, Rockstar "reserves the right to dispute whether the supplemental references are 'printed publications.'"  (Dkt. 263, 1.)

Rockstar incorrectly asserts that Google <u>deliberately</u> delayed in bringing its Motion after receiving the IPO Filings.  Most of the references were received and produced to Rockstar in late August, with one IPO Filing received on September 5 from third-party Open Text.   On September 9, Google notified Rockstar of its intent to file the Motion.  (Ex. C, 3.)  <u>Sixteen days later</u>, on September 25, Rockstar indicated its opposition the Motion.  (*Id*., 1.)  The parties agreed to address the issue at the Court-ordered in-person meet and confer on September 29, before which Google could not have filed its Motion.  (*Id*.)  Then, at the October 10 discovery hearing,

3

the Court ordered the parties to simultaneously exchange opening briefs on all open discovery issues at a later date (October 10, 2014 Hearing Tr., 95:5-18).  The parties agreed that opening briefs would be filed October 24, 2014, which is exactly the day Google filed this Motion.  (Ex. D.)[3]

Thus, unlike the defendant in *Catch a Wave Techs*—who offered no explanation—Google has demonstrated good reason for amending its Invalidity Contentions.

## II.      THE IPO FILINGS ARE VITALLY IMPORTANT TO GOOGLE'S CASE

Tellingly, Rockstar makes no attempt to dispute that the IPO Filings invalidate the claims.  The Excite IPO Prospectus, for example, plainly invalidates claim 1 of the '969 patent. (Ex. E.)  Instead, Rockstar argues that, because the IPO Filings describe search engines that Google has already charted as prior art systems, the IPO Filings cannot be important as additional printed publications.  At a minimum, Rockstar ignores the evidentiary differences between demonstrating a system was "known or used" or "in public use" compared with establishing a reference as a printed publication.  35 U.S.C. § 102.  The IPO Filings, received through the SEC, no doubt qualify as printed publications and granting the Motion ensures Google's ability to present these search engines at trial—regardless of any objections Rockstar may otherwise mount against these references as system art.  The possibility that Rockstar may successfully prevent Google from relying on these search engines as system art renders these IPO Filing critically important to Google's defense.  Granting the Motion may also save the Court from the burden of deciding these evidentiary issues later in the case, since Google's ability to present the IPO Filings as printed publications likely eliminates any advantage to challenging the prior art systems.

## III.     ROCKSTAR WILL NOT SUFFER ANY PREJUDICE

Rockstar's conclusory allegations of prejudice have no basis in reality.  Rockstar "does not identify any particular arguments or additional claims that [it] would have asserted in

---

[3]  Google filed this Motion separately from its expedited motion to compel discovery because Rockstar objected to this Motion being included in the expedited motion to compel discovery.

response to the additional prior art references." *Alt*, 2006 WL 278868 at *5 (finding no actual prejudice despite defendant filing its motion to amend 2 months after opening claim construction briefs).  Why?  Because Rockstar already had 5 months to consider the detailed claim charts served with Google's original Invalidity Contentions for these same search engines.  Indeed, Rockstar's only basis for minimizing the vital importance of the IPO Filings is that these references describe previously charted search engines.  If Rockstar even suspected that these references might change its claim construction strategy, it would have immediately requested claim charts from Google prior to serving its opening brief (which Google would have provided).  Rather, Rockstar never requested any invalidity charts and waited until after it filed its opening claim construction brief before even indicating its intent to oppose the Motion.  (Ex. C, 1.)  To this day, Rockstar fails to articulate how granting this Motion would have any actual effect on claim construction.

Rockstar also fails to point out any discovery that could not take place within the months before the close of discovery.  Without any actual prejudice, Rockstar essentially argues for "a *per se* rule that invalidity contentions cannot be amended after *Markman*," which courts in this district have previously rejected.  *Alt*, 2006 WL 278868 at *5.

Further, after Google's repeated complaints that Rockstar's Infringement Contentions have been deficient from the very outset, the Court recently gave Rockstar leave to supplement its own infringement positions.  (Dkt. 206, 3.)  "[D]iscovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense."  *O2 Micro*, 467 F.3d at 1365 (Fed. Cir. 2006) (emphasis added).  Denying Google's Motion would be highly prejudicial, particularly when Rockstar's ambiguous Infringement Contentions, coupled with its over 140 asserted claims, drastically magnified the burden on Google's prior art search.  *See Alt*, 2006 WL 278868 at *2 (granting motion to add new references in light of plaintiff's "very broad and unclear" infringement contentions).

For the foregoing reasons, Google requests that its motion be granted.

DATED: November 13, 2014          QUINN EMANUEL URQUHART & SULLIVAN, LLP

By    /s/ David Perlson

        J. Mark Mann
        State Bar No. 12926150
        G. Blake Thompson
        State Bar No. 24042033
        MANN | TINDEL | THOMPSON
        300 West Main Street
        Henderson, Texas 75652
        (903) 657-8540
        (903) 657-6003 (fax)

        QUINN EMANUEL URQUHART &
        SULLIVAN, LLP
        Charles K. Verhoeven
          charlesverhoeven@quinnemanuel.com
        David A. Perlson
          davidperlson@quinnemanuel.com
        50 California Street, 22nd Floor
        San Francisco, California  94111-4788
        Telephone: (415) 875 6600
        Facsimile: (415) 875 6700

        *Attorneys for Google Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 13, 2014.

/s/ *Lance Yang*

Lance Yang